AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Information associated with Manuela.bailo@libero.it stored at premises controlled by Apple Inc. | ) ) ) |

Case No. 19-ml-613

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attached Affidavit in Support of Search Warrant | |

The application is based on these facts:

See Attached Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Carlos A. Tomala, FBI, Supervisory Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ **telephone** _____ *(specify reliable electronic means)*.

Date: _____ 06/03/2019 _____

_____
*Judge's signature*

City and state: _____ Washington, D.C. _____

Robert B. Collings, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  19-ml-613 |
| Information associated with Manuela.bailo@libero.it | ) | |
| stored at premises controlled by Apple Inc. | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____Californa_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference

**YOU ARE COMMANDED** to execute this warrant on or before _____June 17, 2019_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Robert B. Collings, United States Magistrate Judge_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   06/03/2019 _____

_____
*Judge's signature*

City and state:   Washington, D.C. _____

Robert B. Collings, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 19-ml-613 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**


      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

This warrant applies to information that is associated with the iCloud account identified by **Manuela.bailo@libero.it** and is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company that accepts service of legal process at 1 Infinite Loop, Cupertino, California 95014.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

### I.   Information to be disclosed by Apple Inc. ("PROVIDER") to facilitate execution of the warrant

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, regardless of whether such information is located within or outside of the United States, including any records that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government for each account or identifier listed in Attachment A ("Account"):

a.      For the period from July 1, 2018 to, and including, August 21, 2018:  The source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

b.      For the period from July 1, 2018 to, and including, August 21, 2018:  The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

c.      For the period from July 1, 2018 to, and including, August 21, 2018: The contents of all files and other records stored on iCloud, including all iOS device backups, all PROVIDER and third-party app data (including WhatsApp and Facebook), all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

d.      For the period from July 1, 2018 to, and including, August 21, 2018: All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of PROVIDER and third-party apps), My Apple ID and iForgot logs, sign-on logs for all PROVIDER services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of PROVIDER services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

e.      For the period from July 1, 2018 to, and including, August 21, 2018: All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

f.      For the time period July 1, 2018 to, and including, August 21, 2018, all records concerning the deletion of data associated with the Account, including deletion of iCloud data,

2

location data, and iMessages (except for data deleted by PROVIDER in the normal course of business);

g.      All records pertaining to the types of service used;

h.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to PROVIDER;

i.      Basic subscriber records and login history, including all records or other information regarding the identification of the Account, to include full name, physical address, telephone numbers, birthdate, security questions and passwords, and other personal identifying information, records of session times and durations, the date on which the Account was created, the length of service, types of services utilized by the Account, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, means and source of payment (including any credit or bank account number), and any account(s) linked by subscriber address, phone or SMS number, e-mail address, subscriber payment information, creation IP address, or machine cookies that logged into or accessed PROVIDER services by the same machine as the Account; and

j.      All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding

cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s).

Within 4 days of the service of this warrant, PROVIDER shall deliver the information set forth above via United States mail or courier to:  Supervisory Special Agent Robert C. Basáñez, or via e-mail to Federal Bureau of Investigation, J. Edgar Hoover Building, MLAT Unit, Room 7848, 935 Pennsylvania Avenue, NW, Washington D.C. 20535-0001 or e-mail to HQ_ISP_MLAT_Returns@FBI.gov.  PROVIDER is specifically authorized to transmit or send the information specified below to the Federal Bureau of Investigation anywhere in the United States, including, but not limited to, Washington, D.C.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of criminal laws of Italy, specifically Section 575 of the Italian Criminal Code, regarding homicide, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Information that constitutes evidence concerning the murder of Manuela Bailo, including but not limited to:

    a. the nature of the relationship between Manuela Bailo and Fabrizio Pasini;

    b. communications between Manuela Bailo and Fabrizio Pasini;

c.   the location and activities of Manuela Bailo and Fabrizio Pasini;

d.   the location of Bailo's Silver Apple iPhone SE; and

e.   any communications sent and received by Bailo's Silver Apple iPhone SE after July 29, 2018 3:45 a.m (Italian time).

### III.     Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States and shared with appropriate foreign authorities.

Law enforcement personnel will then seal any information from PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY APPLE INC. PURSUANT TO 18 U.S.C. 2703 AND 3512** | **ML No. 19-613** |

*Reference:*    *DOJ Ref. # CRM-182-66738; Subject Account: Manuela.bailo@libero.it*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Carlos A. Tomala, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with one account – that is, Manuela.bailo@libero.it – which is stored at premises controlled by Apple Inc. ("PROVIDER"), an electronic communications services provider and/or remote computing services provider, which accepts service of process at 1 Infinite Loop, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      The information requested in this search warrant is being sought pursuant to a request for assistance ("Request") from the Ministry of Justice in the Italian Republic ("Italy"), transmitted to Washington, D.C.  Authorities in Italy are investigating Fabrizio Pasini ("Pasini") for a homicide committed on or about July 29, 2018, in violation of the criminal laws of Italy, specifically, Section 575 of the Criminal Code of Italy.  A copy of the applicable law is appended to this affidavit.  This Request is made pursuant to the Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters signed 9 November 1982, Italy-U.S., May 3, 2006, S. TREATY DOC. NO. 109-13 (2006) (hereinafter, the "Instrument").  Under the Instrument, the United States is obligated to render assistance in response to the request.

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 1997.  I am currently assigned to the International Operations Division, Mutual Legal Assistance Treaty Unit, in Washington, D.C.  My current duties include responding to requests from foreign governments pursuant to mutual legal assistance treaties, including serving as the affiant on search warrant affidavits, serving search warrants, and reviewing the data received in response thereto for relevance in compliance with the parameters of the search warrants.  During my employment with the FBI, I have conducted investigations related to high technology and cybercrimes, cyber intrusions, remote delivery of exploits, and cyber offensive attacks.  I have also worked on numerous criminal and counterintelligence investigations.  I have experience in the execution of search warrants and the analysis of collected evidence.  Additionally, I have received training in the operation of computers and the collection and handling of digital

evidence.  I have been trained by the FBI as a Digital Extraction Technician ("DExT") and

received specialized training in several forensic software programs, such as Forensic Toolkit

("FTK"), EnCase, and X-Ways Forensics.

4.     The facts set forth in this affidavit are based upon information conveyed to the

United States via the Request made pursuant to the Instrument by authorities in Italy and upon

my training and experience.  This affidavit is intended to show merely that there is sufficient

probable cause for the requested warrant.  It does not set forth all of my knowledge, or the

knowledge of others, about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, I

respectfully submit that there is probable cause to believe that violations of the criminal laws of

Italy have been committed by Pasini.  There is also probable cause to search the information

described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes

further described in Attachment B.

## JURISDICTION

6.     Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed

Order.  *See* Instrument Annex art. 4(1) (authorizing courts to issue orders necessary to execute

the request).  In addition, this Court has jurisdiction to issue the requested warrant because it is

"a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(a),

(b)(1)(A) & (c)(1)(A).  Specifically, the Court "is acting on a request for foreign assistance

pursuant to [18 U.S.C.] section 3512 . . . ."  18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C.

§ 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic

communications or for records related thereto, as provided under section 2703"), § 3512(c)(3)

("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia")).

7.      This application to execute Italy's request has been approved and duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs ("OIA").[1]  *See* 18 U.S.C. § 3512(a).  An OIA attorney has authorized the undersigned to file this application.

## **PROBABLE CAUSE**

8.      Italian authorities are investigating Pasini for the murder of Manuela Bailo (the "victim") on or about July 29, 2018, in Ospitaletto, Italy.

9.      The victim was reported missing by her mother on August 2, 2018.

10.     Italian authorities collected CCTV footage that documented the last known movements of the victim.  The CCTV footage revealed that the victim was with Pasini on July 29, 2018, just prior to her disappearance.

11.     On August 20, 2018, Pasini was stopped by Italian authorities and admitted that he had killed the victim.  Later that same day, Pasini led Italian authorities to an abandoned farmhouse (the "farmhouse") in Azzanello, Italy, where the victim's body was recovered.

12.     An examination of the victim's body indicated that the victim had been hit in the head and her throat had been cut.

13.     Based on CCTV footage collected by Italian authorities and Pasini's own statements, Italian authorities have established the following timeline of events:

---

[1]  The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

- On July 28, 2018 at approximately 6:30 p.m., Pasini and the victim met in Brescia, Italy for drinks at a pub.  Using Pasini's car, Pasini and the victim then traveled together to Ospitaletto, Italy, to Pasini's mother's house, arriving at approximately 7:27 p.m.  Italian authorities later located the victim's car parked near the pub.

- On July 29, 2018 at approximately 1:56 a.m., Pasini and the victim left Pasini's mother's house and travelled to a hospital in Brescia where Pasini received medical treatment.

- On July 29, 2018 at approximately 3:57 a.m., Pasini and the victim returned to Pasini's mother house.  This is the last known time that the victim was seen alive.

- On July 29, 2018, at approximately 6:15 a.m., Pasini left his mother's house alone and returned to his own home.

- On July 30, 2018 at approximately 11:05 a.m., Pasini travelled to Azzanello, Italy to inspect the farmhouse.

- On July 30, 2019 at approximately 2:23 p.m., Pasini returned to his mother's house to retrieve the victim's body and then transported her body to the farmhouse.

14.     Based on the above timeline, Italian authorities believe that the victim was killed on July 29, 2018 between approximately 3:57 a.m. and 6:15 a.m.

15.     During his August 20, 2018 interview, Pasini admitted to having an on-again off-again romantic relationship with the victim since early 2016.  He claimed that their romantic relationship ended in August 2017, when they decided to be "just friends."  When confronted with videos obtained from the victim's home that go back to September 2017 which suggested

otherwise, Pasini stated, "I confirm my statements.  I wanted to get back together with Manuela but she didn't want it and from that moment I accepted her decision."  Pasini also told Police that he lied to his wife about where he was on July 29, 2018.  Specifically, Pasini claimed he told her that he "had spent the night with my friend Giuliano and I got hurt by tripping on his dog's leash."

16.     Additionally, during his August 20, 2018 interview, Pasini told Italian authorities that he had been in communication with the victim via WhatsApp on July 27, 2018, but had deleted the messages.  He further claimed that on or about July 29, 2018, when they were together at his mother's house, he had an argument with the victim over a new tattoo he had obtained a few days prior.  During the argument, Pasini claimed that he pushed the victim and she fell down the stairs.  He stated that the victim was still alive after the fall, but died shortly thereafter.  Pasini told Italian authorities that he hid her body in his mother's cellar until he moved her corpse to the farmhouse on July 30, 2018.

17.     When confronted with screenshot images of WhatsApp messages sent from the victim's phone after her death, Pasini also admitted to taking the victim's cell phone, a Silver Apple iPhone SE (the "phone"), and using it to send messages to her friends and colleagues in an effort to conceal her death.

18.     Italian authorities determined that the following messages were sent from the victim's phone after her death:

- July 29, 2018 at approximately 7:04 p.m. a message was sent to the victim's partner ("Witness 1") stating "Hi, I will stay away from home tonight and I will go to work tomorrow in the morning."

- July 29, 2018 at approximately 8:25 p.m. a message was sent to the victim's

friend stating "HI, It's all ok, I'm at the lakeside."

- July 30, 2018 at approximately 8:30 a.m. a message was sent to the victim's colleague stating "Hi I'm sick. High fever. I'm going to see a doctor. I'll let you know," and again at 10:35 a.m. stating "thank you."

- July 30, 2018 at approximately 8:30 a.m. a message was sent to another one of the victim's colleagues stating "Hi, I don't know how to help you. I'm very sick. Ask Giovanni," and again at 9:18 a.m. stating "thank you."

- July 30, 2018 2018 at approximately 11:12 a.m. a message was sent to another one of the victim's colleagues stating "I'm fine" and "I need a doctor, hope to get well."  Then again, writing to the colleague at approximately 11:27 a.m. stating that "now high fever," and at approximately 3:40 p.m. stating "I'm tired."

- July 30th, 2018 at approximately 8:51 p.m. a message was sent to Witness 1 stating "She is the only friend I have. I have no plan for the night. Bye."

19.     Pasini claimed that he had hidden the victim's phone in the drawer of a side-table in his sitting room.  He claimed that he had discarded it by Lake Iseo, Italy on July 31, 2018.  To date, Italian authorities have been unable to locate the phone.

20.     According to Witness 1, who lived with the victim, the victim always used Apple iPhones registered with the same e-mail account.  Witness 1 further stated that the victim had been using the phone just prior to her disappearance and generally used the phone daily to conduct calls and chats using WhatsApp and Facebook.  Witness 1 also stated that the victim would periodically backup her phone using the iCloud service.

21.     The victim's phone was registered with PROVIDER using the e-mail address **Manuela.bailo@libero.it**.

7

22.     Italian authorities now seek records from PROVIDER, including iCloud backups, for the account associated with **Manuela.bailo@libero.it**, in order to gather evidence related to the victim's death.

### BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

23.     PROVIDER is the provider of the internet-based account identified by Manuela.bailo@libero.it.

24.     PROVIDER is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

25.     PROVIDER provides a variety of services that can be accessed from PROVIDER devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

26.     PROVIDER provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

27.     iMessage and FaceTime allow users of PROVIDER devices to communicate in real-time.  iMessage enables users of PROVIDER devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

28.     iCloud is a file hosting, storage, and sharing service provided by PROVIDER. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

29.     iCloud-connected services allow users to create, store, access, share, and synchronize data on PROVIDER devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access PROVIDER email accounts on multiple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from PROVIDER devices, and iCloud Photo Sharing allows the user to share those images and videos with other PROVIDER subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's PROVIDER devices.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple PROVIDER devices.

30.     Game Center, PROVIDER's social gaming network, allows users of PROVIDER devices to play and share games with each other.

31.     Find My iPhone allows owners of PROVIDER devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.  Find My Friends allows owners of PROVIDER devices to share locations.

32.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

33.     App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through

iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

34.     PROVIDER services are accessed through the use of an "Apple ID," an account created during the setup of an PROVIDER device or through the iTunes or iCloud services.  A single Apple ID can be linked to multiple PROVIDER services and devices, serving as a central authentication and syncing mechanism.

35.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit a PROVIDER-serviced email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most PROVIDER services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by PROVIDER to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

36.     PROVIDER captures information associated with the creation and use of an Apple ID.  During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by PROVIDER.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on PROVIDER's website.  In addition, PROVIDER captures the date on which the account was created, the length of service, records of log-in times and durations, the

types of service utilized, the status ¬¬of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

37.     Additional information is captured by PROVIDER in connection with the use of an Apple ID to access certain services.  For example, PROVIDER maintains connection logs with IP addresses that reflect a user's sign-on activity for PROVIDER services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on PROVIDER's website.  PROVIDER also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over a PROVIDER-serviced email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by PROVIDER.

38.     PROVIDER also maintains information about the devices associated with an Apple ID.  When a user activates or upgrades an iOS device, PROVIDER captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  PROVIDER also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  PROVIDER also

11

retains records related to communications between users and PROVIDER customer service, including communications regarding a particular PROVIDER device or service, and the repair history for a device.

39.     PROVIDER provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by PROVIDER, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on PROVIDER's servers in an encrypted form but can nonetheless be decrypted by PROVIDER.

40.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

41.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  In this matter, French authorities have established that the Suspects routinely used third-party applications such as WhatsApp, Telegram, and Facebook Messenger to communicate with each other, while regularly changing mobile devices.  The stored communications and files associated with the Suspects' Apple ID is thus likely to provide direct evidence of Suspects' communication and information sharing over the course of the criminal conduct investigated.

42.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by PROVIDER can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

43.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.  A list of apps are also likely to reveal banking institutions or money transferring services used by the targets.

45.     Therefore, PROVIDER's servers are likely to contain stored electronic communications and information concerning subscribers and their use of PROVIDER's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.[2]

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

46.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in

---

[2] At times, providers such as PROVIDER can and do change the details and functionality of the services they offer.  While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of PROVIDER's services in connection with submitting this application for a search warrant.  Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

connection with this Application for a Search Warrant. I submit that OIA Trial Attorney

Martyna Pospieszalska, an attorney for the United States, is capable of identifying my voice and

telephone number for the Court.

## CONCLUSION

47.     Based on the forgoing, I request that the Court issue the proposed search warrant.

Because the warrant will be served on PROVIDER who will then compile the requested records

at a time convenient to it, there exists reasonable cause to permit the execution of the requested

warrant at any time in the day or night.

Respectfully submitted,

_____

Carlos A. Tomala
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on **June 3, 2019**

_____

Robert B. Collings
UNITED STATES MAGISTRATE JUDGE

15

## **Relevant Provision of the Criminal Code of Italy**

**Section 575 – Homicide**

Whoever causes the death of a human being is punishable by no less than 21 years in prison.